# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ISAIAH WASHINGTON,

        Plaintiff,

    v.

SUTTON, et al.,

        Defendants.

**1:20-cv-00983-AWI-GSA-PC**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BE GRANTED**

**(ECF No. 45.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS**

## I.    BACKGROUND

Isaiah Washington ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on July 16, 2020.  (ECF No. 1.)  This case now proceeds with the original Complaint against defendants M. Sturges, O. Navarro, and J. Cornejo (collectively, "Defendants") for use of excessive force in violation of the Eighth Amendment.[1]

On October 7, 2022, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies.  (ECF No. 45.)  On January 23, 2023,

---

[1] On January 3, 2022, the Court issued an order dismissing all other claims and defendants, based on Plaintiff's failure to state a claim.  (ECF No. 25.)

Plaintiff filed an opposition (ECF No. 48), and on February 6, 2023, Defendants filed a reply to the opposition.  (ECF No. 49).

Defendants' motion for summary judgment was submitted upon the record on February 6, 2023, without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow the court finds that Defendants' motion for summary judgment should be granted.

## II.   SUMMARY OF ALLEGATIONS AGAINST DEFENDANTS IN THE COMPLAINT

Plaintiff is presently incarcerated at Solano State Prison in Vacaville, California.  The events at issue in the Complaint allegedly occurred at Wasco State Prison (WSP) in Wasco, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).  This case now proceeds against defendants M. Sturges (ISU Officer), O. Navarro (ISU Officer), and J. Cornejo (ISU Officer) for use of excessive force against Plaintiff.

A summary of Plaintiff's allegations follows:

On September 23, 2019, Plaintiff was handcuffed and escorted into an open hallway with a group of other inmates for the purpose of being strip searched by ISU Officers M. Sturges, O. Navarro, and J. Cornejo. One of the officers removed a pill capsule from Plaintiff's sock, then immediately returned it back into Plaintiff's sock for a picture before removing it for a second time. ISU Officers assisted Plaintiff in pulling down his pants while Plaintiff was handcuffed, in spite of the fact that female free staff and other free staff walked freely through the hallways observing the search. Then all three ISU Officers violently slammed Plaintiff to the floor.

While J. Cornejo pressed Plaintiff's face into the floor and O. Navarro put his weight on Plaintiff's back, Officer Sturges pulled Plaintiff's boxers down, grabbed both of Plaintiff's butt cheeks, stuck several of his fingers in Plaintiff's anus, and retrieved a cell phone. All the while free staff watched. Officer Sturges then re-opened Plaintiff's butt cheeks and stuck several of his fingers in Plaintiff's alimentary canal and jokingly stated, "What else you got in there," while the other officers laughed. This sexual assault lasted for over 30 seconds and was also witnessed by inmates. ISU Officers then took a photograph of Plaintiff with his boxers down, buttocks

2

exposed, with the cell phone below Plaintiff's buttocks while Plaintiff lay helplessly on the floor handcuffed.

Almost four months later, after being released from administrative segregation, Plaintiff filed a 602 appeal for sexual assault. Wasco officials canceled the appeal by improperly and illegally interfering with Plaintiff's appeal by changing the topic of Plaintiff's appeal from sexual assault to misuse of force and determined that Plaintiff had exceeded the time limits for submitting an appeal. Less than three months later, Plaintiff re-submitted a similar sexual assault 602 appeal regarding the same incident. Officer F. Feliciano, appeals coordinator, canceled Plaintiff's appeal for the same erroneous reasons, stating that Plaintiff's claims were not sexual assault claims under PREA (Prison Rape Elimination Act)[2] standards and were only misuse of force. Officer F. Feliciano purposely canceled Plaintiff's appeal, interfering with Plaintiff's access to court to protect his colleagues, aware that PREA issues have no statute of limitations. Warden Sutton interfered with Plaintiff's access to court and is liable for Plaintiff's injuries because he acquiesced to the ISU Officers' behavior by allowing and knowing his subordinates cancelled Plaintiff's legitimate claims, sexually assaulted Plaintiff, and did nothing to correct it. Plaintiff suffers from PTSD which requires daily medication, soreness in his rectal area, emotional distress and humiliation. Plaintiff's left shoulder was also damaged.

---

[2] Plaintiff cannot state a claim under the Prison Rape Elimination Act (PREA); 42 U.S.C. § 15601. See Sharkey v. Nevada Dep't of Corr., No. 220CV00397JADBNW, 2021 WL 2270670, at *4 (D. Nev. June 3, 2021). While the PREA was designed to study the problem of prison rape and to authorize reporting of incidents of rape, it does not provide a private right of action that allows a prisoner to sue for a violation of the Act. Id. 34 U.S.C. § 30302(1) ("[The purpose of the Act is to] establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States.") As a result, multiple courts have dismissed similar claims brought under the Act. Id., citing see, e.g., Krieg v. Steele, 599 F. App'x 231, 233 (5th Cir. 2015) (collecting cases); Rutledge v. Lassen Cnty. Jail, No. 2:18-cv1600, 2021 WL 1062560, at *2 (E.D. Cal. Feb. 12, 2021); Law v. Whitson, 2:08-CV-0291, 2009 WL 5029564, at *4 (E.D. Cal. Dec. 15, 2009). Absent a statutory provision giving rise to a federal right enforceable under § 1983 in "mandatory, rather than precatory, terms," Plaintiff cannot state a claim for which relief can be granted under the PREA. Id.

### III.     PLAINTIFF'S LATE-FILED EVIDENCE

On March 27, 2023, Plaintiff filed a "Notice of Exhibit A re Exhaustion of Administrative Remedies" (hereafter "Notice of Exhaustion").  (ECF No. 50.)  On April 11, 2023, Defendants filed a motion to strike Plaintiff's Notice of Exhaustion.  (ECF No. 52.)  Plaintiff has not filed an opposition to the motion to strike.  (Court Docket.)

The Notice of Exhaustion includes four pages of exhibits attached as Exhibit "A," which Plaintiff contends provide evidence that he exhausted his administrative remedies for his sexual assault and excessive force claims in this case.  (Id.)  Plaintiff's exhibits include a 2-page Office of Appeals Decision for Appeal Log. No. 341428 dated February 28, 2023, notifying Plaintiff of the decision that his Appeal Log No. 283439 had been improperly rejected by department staff, and "[t]he California State Prison, Solano shall open a new Offender Grievance Tracking log number to specifically address appellant's claim concerning Offender Grievance Tracking Log #283439, and shall have available for review all documentation to support their findings."  (ECF No. 50 at 3.)

Defendants argue that Plaintiff's evidence in the Notice of Exhaustion should be stricken from the record because it was submitted untimely; the evidence is inadmissible and irrelevant; it does not show Plaintiff exhausted his remedies for the claims in this case; Plaintiff's grievance did not inform prison officials of Plaintiff's excessive force claim; and Plaintiff's grievance was not filed before this lawsuit was filed.

**Discussion**

The Court finds that Plaintiff's Notice of Exhaustion was untimely filed and should be stricken from the record for that reason alone.  Moreover, even if timely filed, Plaintiff's Notice of Exhaustion provides no evidence that Plaintiff exhausted his remedies for the claims in this case before he filed this lawsuit.

First, to the extent that Plaintiff relies on the March 27, 2023 Notice of Exhaustion as part of his opposition to Defendants' pending motion for summary judgment, the Notice was not timely filed.

**Local Rule 230(*l*) provides that:**

4

(l) Motions in Prisoner Actions. All motions, except motions to dismiss for lack of prosecution, filed in actions wherein one party is incarcerated and proceeding in propria persona, shall be submitted upon the record without oral argument unless otherwise ordered by the Court. Such motions need not be noticed on the motion calendar. Opposition, if any, to the granting of the motion shall be served and filed by the responding party not more than twenty-one (21) days after the date of service of the motion. A responding party who has no opposition to the granting of the motion shall serve and file a statement to that effect, specifically designating the motion in question. Failure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions. The moving party may, not more than fourteen (14) days after the opposition has been filed in CM/ECF, serve and file a reply to the opposition. All such motions will be deemed submitted when the time to reply has expired.

Here, Defendants' motion for summary judgment was filed on October 7, 2022.  (ECF No. 45.)  On January 9, 2023, the Court issued an order requiring Plaintiff to file an opposition or notice of non-opposition to the motion for summary judgment.  (ECF No. 47.)  On January 23, 2023, Plaintiff filed his opposition.  (ECF No. 48.)

Under Local Rule 230(l), Defendants had fourteen days after Plaintiff's opposition was filed and served to file a reply to the opposition.  L.R. 230(l).  Plaintiff's opposition was served on January 19, 2023 and filed on January 23, 2023.  (Id. at 104.)  Therefore, Defendants' reply was due fourteen days after January 23, 2023, on February 6, 2023.  Defendants timely filed their reply on February 6, 2023. (ECF No. 49.) Therefore, under Local Rule 230(l), Defendants' motion for summary judgment was deemed submitted on February 6, 2023, and the time for the parties to respond to the motion expired.

Plaintiff filed his Notice of Exhaustion on March 27, 2023, which was well after the February 6, 2023, deadline had expired. (ECF No. 50.)  Therefore, Plaintiff's Notice of Exhaustion was filed too late.  Plaintiff did not request leave to file a late opposition, nor was there any reason for the Court to allow the Notice of Exhaustion as a late opposition.  To the extent that the Notice of Exhaustion could be considered as a surreply to Defendants' reply to Plaintiff's opposition, the Notice of Exhaustion did not address new evidence found in Defendants' reply, and the Court finds that no valid reason for such additional briefing.  See Hill v. England,  No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005).

Even if the Notice of Exhaustion had been timely filed, it provides no evidence that Plaintiff exhausted his administrative remedies for his claims in this case before Plaintiff filed this lawsuit.  The Office of Appeals Decision submitted with the Notice of Exhaustion states in two places that "[T]his decision exhausts the administrative remedies available to the claimant within CDCR."  (ECF No 50 at 3 & 4.)  However, the Office of Appeals Decision is dated February 28, 2023, which is well after Plaintiff filed this case on July 16, 2020 (ECF Doc #1). Even if Plaintiff's Notice of Exhaustion showed that Plaintiff's claims in this case were exhausted on February 28, 2003, this evidence does not show that Plaintiff exhausted his claims for this case before he filed his lawsuit.

Based on the foregoing, the Court shall recommend that (1) Defendants' motion to strike Plaintiff's Notice of Exhaustion, filed on April 11, 2023, be granted; and (2) Plaintiff's Notice of Exhaustion, filed on March 27, 2023, be stricken from the record as untimely and because it fails to provide evidence that Plaintiff exhausted his administrative remedies for his claims in this case.

## IV.    SUMMARY JUDGMENT BASED ON EXHAUSTION – LEGAL STANDARDS

### A.    Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that

are defined not by the PLRA, but by the prison grievance process itself." <u>Bock</u>, 549 U.S. at 218 (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). <u>See also</u> <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. <u>Woodford</u>, 548 U.S. at 90. However, the Ninth Circuit has made clear: A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. <u>Id.</u>

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir. 2010) (citing <u>Bock</u>, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. <u>Id</u>; <u>Griffin</u>, 557 F.3d at 1120; <u>see also</u> <u>Bock,</u> 549 U.S. at 219 (citing <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case, the grievance process used at Wasco State Prison where Plaintiff was incarcerated defines the boundaries of proper exhaustion.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. <u>See</u> <u>Albino v. Baca (Albino II)</u>, 747 F.3d 1172-73 (9th Cir. 2014). When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." <u>Sapp</u>, 623 F.3d at 823; <u>see also</u> <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); <u>Ward v. Chavez</u>, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); <u>Brown v. Valoff</u>, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required

to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance).  In such a case, "the inmate cannot pursue the necessary sequence of appeals." Sapp, 623 F.3d at 823.

**B.**   **California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System**

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2018).  The process is initiated by submitting a CDCR Form 602.  Id. at § 3084.2(a) (2018).

On January 28, 2011, California prison regulations governing inmate grievances were revised.  Cal.Code Regs. tit. 15, § 3084.7 (2018).  Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal.Code Regs. tit. 15, § 3084.7 (2018). Under specific circumstances, the first level review may be bypassed.  Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3) (2018). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal.Code Regs. tit. 15, § 3084.2(a)(3) (2018).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific

issue under appeal and the relief requested." Cal.Code Regs. tit. 15, § 3084.2(a)(4) (2018). An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal.Code Regs. tit. 15, § 3084.8(b) (2018).

At the time of the events giving rise to the present action in 2019, as well as at the time Plaintiff filed his first appeal on February 7, 2020, California prisoners were required to submit appeals within thirty calendar days of the occurrence of the event or decision being appealed. Cal.Code Regs. tit. 15, § 3084.8(b) (2019). The process was initiated by submission of the appeal to the first formal level. Id. at § 3084.7(a) (2019). Three levels of appeal were involved, including the first formal level, second formal level, and third formal level. Id. at § 3084.7 (2019). A final decision at the third level[3] of review satisfied the exhaustion requirement under 42 U.S.C. § 1997e(a). Id. at § 3084.7(d)(3) (2018); see Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005).

In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler, 397 F.3d at 1183; Bennett, 293 F.3d at 1098.

**Discussion**

Plaintiff submitted his initial appeal concerning this matter on February 7, 2020, which was marked filed by the prison on February 14, 2020, and was given case # WSP-A-20-00731 (ECF Doc # 48, pg 39). Given this, California's rules regarding exhaustion which were in effect on that date (February 7, 2020) control the exhaustion procedure here and thus Plaintiff was required to follow the procedures set forth in California Code of Regulations, title 15, sections 3084-3085 (repealed effective June 1, 2020). (See, Springs v Raber 2022 US Dist Lexis 62744).

---

[3] The third level is sometimes known as the Director's level.

**C.**   **Motion for Summary Judgment for Failure to Exhaust**

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. <u>Bock</u>, 549 U.S. at 216; <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the Ninth Circuit issued a decision overruling <u>Wyatt</u> with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). <u>Albino II</u>, 747 F.3d at 1168–69. Following the decision in <u>Albino II</u>, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[4] or (2) a motion for summary judgment under Rule 56. <u>Id.</u> If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). <u>Bock</u>, 549 U.S. at 223–24; <u>Lira</u>, 427 F.3d at 1175–76.

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Albino II</u>, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.") A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party." <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011). The court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010).

---

[4] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." <u>Albino II</u>, 747 F.3d at 1162.

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## V.     PARTIES' UNDISPUTED FACTS RE ADMINISTRATIVE REMEDIES [5]

In accordance with Local Rule 260(a), on October 7, 2022, Defendants submitted the following Separate Statement of Undisputed Material Facts with references to the supporting evidence. (ECF No. 45-4.) Defendants identify these facts as undisputed solely for the purposes of moving for summary judgment and reserve the right to contest all material facts at trial.

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
| --- | --- |
| 1. Plaintiff was a state prisoner incarcerated | Complaint (Compl.) at 1 (ECF No. 1). |

---

[5] These facts are taken from Defendants' Separate Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment For Failure to Exhaust Administrative Remedies. (ECF No. 45-4.) Plaintiff failed to properly address Defendants' Separate Statement of Undisputed Material Facts. Local Rule 260(b). Accordingly, the court may consider Defendants' assertions of fact as undisputed for purposes of this motion. Id; Fed. R. Civ. P. 56(e)(2).

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| at Wasco State Prison (Wasco) during the relevant time period for this case. | |
| 2. Defendants served as investigative service unit officers at Wasco. | Compl. at 3. |
| 3.  Plaintiff filed the Complaint on July 16, 2020 against Defendants, Counselor Feliciano, and the warden, asserting 42 U.S.C. section 15601, Eighth Amendment, and First Amendment violations. | Compl. at 4–7. |
| 4. The Court screened the complaint and found Plaintiff stated one cognizable claim for excessive force against Defendants, while also finding that Plaintiff failed to state a claim for sexual assault against Defendants and for failure to properly process his appeals against Feliciano and the warden. | Screening Order (ECF No. 17). |
| 5. Plaintiff waived the chance to amend the complaint and is proceeding only on the excessive force claim. | ECF No. 18 at 3. |
| 6. The California state prison system maintained a comprehensive regulatory scheme on prisoners' exhaustion of administrative remedies at all times relevant here. | Cal. Code Regs. tit. 15 (Title 15) (2019). |
| 7. The regulatory appeal process meant to "provide a remedy for inmates . . . with | Title 15, § 3084.1. |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
| --- | --- |
| identified grievances and to provide an administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates . . . ." | |
| 8. The regulation firmly established that unless otherwise noted, "all appeals are subject to a third level of review . . . before administrative remedies are deemed exhausted."<br><br>The regulation did not consider appeals exhausted "relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal . . . and addressed through all required levels of administrative review up to and including the third level."<br><br>It stressed that "a cancellation or rejection decision does not exhaust administrative remedies." | Title 15, § 3084.1(b). |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 9. All inmates had to use a Form 602 to submit an appeal, in which they needed to "describe the specific issue under appeal and the relief requested." | Title 15, § 3084.2(a). |
| 10. The regulation limited each filed appeal to "one issue or related set of issues per each Inmate/Parolee Appeal form . . . ." | Title 15, § 3084.2(a)(1). |
| *Here, Defendants' Statement of Undisputed Facts skips numbers 11 and 12 and proceeds to number 13.* | |
| 13. Each appeal had to affirmatively allege all staff members involved and describe their involvement in the issue, along with including their last name, first initial, title or position, and the dates of the members' involvement in the issue.<br><br>If the appealing inmate did not know these details, he or she had to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the member(s) in question."<br><br>Additionally, the appealing inmate needed to "state all facts known available to him/her | Title 15, § 3084.2(a)(3). |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| regarding the issue being appeal at the time of submitting the Inmate/Parolee Appeal Form . . . ." | |
| 14. For the first and second level review, the appeal went to the inmate's housing institution's appeals coordinator, whereas an appeal to the third level review went to the headquarters' Appeals Chief. | Title 15, § 3084.2©-(d). |
| 15. If an inmate filed multiple appeals on the same issue, prison officials processed each appeal individually, unless an appeal contained other issues additional or extraneous to the multiple issue appeal, which prison officials processed a separate appeal. | Title 15, § 3084.2(i). |
| 16. Each institution's appeals coordinator screened all filed inmate appeals. | Title 15, § 3084.5(a)-(b). |
| 17. Whenever prison officials cancelled or rejected an appeal, the inmate received specific reasons for the cancellation or rejection and what corrections must be made. | Title 15, § 3084.5(b)(3). |
| 18.  If an inmate appeal described staff behavior or activity in violation of a law, regulation, policy, or procedure, or contrary to an ethical or professional standard, that could be considered misconduct as defined | Title 15, § 3084.5(b)(4)(A)- (C). |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| under the regulatory standard, then the appeals coordinator had to further determine if he or she should process the appeal as a routine appeal but not as a staff complaint, process it as a staff complaint appeal inquiry, or refer it to the internal affairs. | |
| 19.  Only prison officials had the discretion to decide whether an inmate appeal was proper. | Title 15, § 3084.6(a). |
| 20.  An appeals coordinator could cancel a filed appeal if an inmate exceeded the time limit to submit that appeal, "even though the inmate . . . had the opportunity to submit within the prescribed time constraints." | Title 15, § 3084.6©(4). |
| 21.  Inmates had to file their appeal within thirty calendar days of "[t]he occurrence of the event or decision being appealed," "[u]pon first having knowledge of the action or decision being appealed," or "[u]pon receiving an unsatisfactory departmental response to an appeal filed." | Title 15, § 308.8(b)(1)-(3). |
| 22.  The only exception to this rule applied to "allegations of sexual violence or staff sexual misconduct." | Title 15, § 3084.8(b)(4). |
| 23.  Plaintiff never filed an inmate appeal alleging Defendants used excessive force on him. | Declaration of H. Moseley (Moseley Decl.) at ¶¶ 8-9, Exhibits 1-2; Depo. at 24, 29. |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 24.  Although Plaintiff supposedly filed two claims regarding Defendants' misconduct, Plaintiff alleged the issue to be sexual assault, not excessive force at issue in this case. | Declaration of Theodore G. Lee Exhibit 1 (Deposition Transcript (Depo.) at 1. |
| 25.  Plaintiff acknowledged that none of his inmate appeals concerning Defendants' alleged misconduct exhausted his administrative remedies. | Depo. at 30. |

## VI.   DEFENDANTS' POSITION

Defendants move for summary judgment under Federal Rule of Civil Procedure 56 and in accordance with Albino II, 747 F.3d 1162 on the ground that there is no genuine dispute that Plaintiff failed to exhaust applicable administrative remedies against Defendants for Plaintiff's claims against them prior to filing suit as required by the PLRA, 42 U.S.C. § 1997e(a), and thus Defendants are entitled to judgment as a matter of law.

Defendants' evidence consists of the original Complaint (ECF No. 1); Undisputed Facts (ECF No. 45-4); Declaration of Howard E. Moseley (Associate Director of the Office of the Appeals) (ECF No. 45-1); Declaration of Theodore G. Lee (California Deputy Attorney General) (ECF No. 45-2); Selections from the California Code of Regulations, Title 15; Plaintiff's deposition testimony (ECF No. 45-2 at 4-12); Defendants' Response to Court Order Requesting Additional Information (ECF No. 55), copies of Plaintiff's appeals, responses thereto, and other prison records; and, the Court's record.

Defendants argue as follows:

Plaintiff unquestionably failed to properly exhaust as required under the Prison Litigation Reform Act, California state prison regulations, and other controlling authorities. Plaintiff admitted to failing to exhaust his excessive force claim against Defendants, based on his

unjustified disagreement with prison officials' determination that his inmate appeals did not concern sexual assault. Moreover, Plaintiff waived his chance to challenge the exhaustion issue when he decided not to amend his complaint and opted to proceed only on the excessive force claim. Finally, Plaintiff's contention that Correctional Counselor II F. Feliciano erroneously and improperly cancelled his appeals is unsupported by evidence. Plaintiff's failure to exhaust here is inexcusable and the Court should grant summary judgment in Defendants' favor.

Defendants argue three points in favor of their position.

(1)     Relevant and indisputable evidence shows that Plaintiff failed to exhaust.

A search of Plaintiff's records showed that Plaintiff never filed any appeal concerning Defendants' alleged September 23, 2029 strip search. (Moseley Decl. ¶¶ 8-9.) Also, Plaintiff admitted to not having exhausted his excessive force claim against Defendants. (Depo. at 24, 30.) Plaintiff also conceded that he filed his first inmate appeal against Defendants four months after the strip search incident, which exceeded the thirty calendar day time limit enforced at that time. (Compl. at 5.) (Depo. at 25-26.)

(2)     Plaintiff waived his chance to challenge the exhaustion issue.

Plaintiff believed he could file his appeals four months after the September 23, 2019 incident, (See Depo. at 25–26); Cal. Code Regs. tit. 15, § 3084.8(b)(4), arguing that his appeals alleged staff sexual misconduct, not excessive force. (Compl. at 5.). Plaintiff alleges that the reviewing official -- Correctional Counselor II Feliciano, a nonparty -- misconstrued the appeal to concern misuse of force and cancelled it for being late.  Also, this Court determined that Plaintiff stated only one cognizable claim -- for excessive force -- against Defendants, screening out his claims for sexual assault and for failure to properly process appeals. (Id.); (Screening Order at 6, 11–12.)  However, when given the chance to better substantiate his screened-out claims, Plaintiff opted not to. (ECF No. 18); (see also Findings and Recommendation (ECF No. 19 at 2.))

(3)     Evidence does not support Plaintiff's argument that Correctional Counselor II Feliciano erroneously and improperly cancelled his appeals.

Plaintiff offers only a conclusory statement to support his claim that the appeals coordinator incorrectly determined his appeals as not concerning staff sexual misconduct. (Compl. at 5.)

## VII.   DEFENDANTS' BURDEN

The court finds that Defendants have carried their initial burden to prove that there was an available administrative remedy and that Plaintiff failed to exhaust that remedy for his excessive force claims at issue in this case.  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust the available remedies for his claims against Defendants M. Sturges, O. Navarro, and J. Cornejo, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

## VIII.  PLAINTIFF'S OPPOSITION

In opposition to Defendants' motion, Plaintiff argues that for various reasons, he was thwarted from exhausting his administrative remedies.  He was unable to obtain the appeals forms he needed while he was confined in administrative segregation.  The appeals he submitted were either not received or not processed.  He was prevented from completing exhaustion of his "sexual assault" grievance because it was cancelled as untimely even though under new constraints there was no time limit for filing those appeals.  Defendants wrongly claimed his Complaint was not about excessive force.  Plaintiff found the appeals process very complex.  His outgoing mail correspondence was not processed limiting his ability to correspond with others. Officials lied about the investigation.  Plaintiff was not given access to his property.  Finally, Plaintiff alleges that he was threatened by correctional staff.

## IX.   TIMELINE OF EVENTS

(**1**)   On **February 7, 2020**, Plaintiff submitted Appeal Log # WSP-A-20-00731 (hereafter, Appeal 731) complaining of "Harassment and Staff Misconduct."

**Grievance/Appeal 731 filed on February 7, 2020**

**Subject of Appeal: Harassment and Staff Misconduct**

19

To the Warden of Wasco State Prison (WSP) this is a citizen's complaint pursuant to California Code of Regulation 3084.9(A) and 3291 and 3391, in accordance to Code 832.5 and Evidence Code section 1043. According to Government Code 3300 and 3311, addressing misconduct of investigative Service Unit (ISU) Officer John Doe #1, ISU Officer John Doe #2 and ISU Officer John Doe #3.

On September 23, 2019, appellant was handcuffed and escorted into an open hallway to be strip searched by ISU Officers. The officers removed a (*sic*) individually wrapped object from Appellant's sock band and placed it back for a picture and removed it a second time. A female free staff and other people walked freely through this hall way(s) as the officers physically removed Appellant's clothing. The officers violently slammed appellant to the floor in his boxers and with his hands cuffed behind his back, while on the ground the officers pulled down Appellant's boxers and physically opened his butt cheeks with their hands, with the intent to place a object inside. This incident resulted in the Appellant then placed in AdSeg. This is believed to be the climax of a months long period of harassment by ISU.

(ECF No. 48 at 39, 41.)

       **(2)**     On **February 18, 2020**, Plaintiff's Appeal 731 was cancelled on CDCR Form 602 (Inmate/Parolee Appeal Form) and CDC Form 695, for being submitted outside of the time constraints governing inmate appeals. See Exhibits 5 & 7 to Plaintiff's Oppn., ECF No. 48; [6] Warden H. Shirley's letter to Plaintiff dated May 4, 2020, ECF No. 48 at 22-23 (Exh. 5); Appeal #WSP-A-20-00731, ECF No. 48, at 40-41 (Exh. 7); also see ECF No. 55 at 13, 14 (Screening at the Second Level).

**RE: Screening at the Second Level**

GRIEVANCE AGST STAFF, Misuse of Force, **02/14/20**

Log number: WSP-A-20-00731

Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(4). Time limits for submitting the appeal are exceeded even though you had the opportunity to submit within the prescribed time constraints.

The Wasco State Prison-Reception Center (WSP-RC) Inmate Appeals Office (IAO) IAO received this appeal dated February 7, 2020, on February 14, 2020, wherein you allege you were the victim of excessive / unnecessary force by WSP Custody Staff which occurred "On September 23, 2019…"

A review of the Inmate Appeals Tracking System (IATS) revealed that the WSP-RC's IAO had not previously received an appeal on this issue. You exceeded the time limits for submitting an appeal on this issue even though you had the

---

[6] Plaintiff has submitted two exhibits #5 (see ECF No. 48 at 14-23 and ECF No. 48 at 24-27). Here, the Court refers to the first exhibit #5 (ECF No. 48 at 14-23).

opportunity to submit within the prescribed time constraints.

All appeals are processed according to the provisions of Article 8, Appeals.

CCR §3084.8.(a), states the "Time limits for reviewing an appeal shall commence upon the date of receipt of the appeal form by the appeals coordinator."

CCR §3084.8.(b), states "An inmate or parolee must submit the appeal within 30 calendar days of: (1) The occurrence of the event or the decision being appealed, or: (2) Upon first having knowledge of the action of decision being appealed (3) Upon receiving an unsatisfactory departmental response to an appeal filed."
Be advised Wasco State Prison's Administration does not accept unprofessional conduct by employees who abuse their authority and your appeal was screened in accordance with CCR 3084.9(i).

(ECF No. 55 at 13-14.)

_At the bottom of both pages (13 & 14) of the screening form_, Plaintiff was advised as follows:

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). **Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision.** The original appeal may only be submitted if appeal of the cancellation is granted.

(Id.) (emphasis added)

> (3)    On **February 23, 2020 (stamped rec'd on Feb 27, 2020)**, Plaintiff wrote a letter to the Office of Appeals discussing the cancellation of Appeal 731. Plaintiff stated that the appeals office gave his appeal the subject title "Misuse of Force," and he argued that Appeal 731 should not have been cancelled as untimely because "there are not time restraints on sexual assault and there is a year to file a staff complaint." (ECF No. 48 at 47.)

> (4)    On **March 30, 2020**, a Memorandum was sent to Plaintiff by the Office of Appeals in response to Plaintiff's correspondence dated 3/19/2020, advising Plaintiff in relevant part:

Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. **However, a separate appeal can be filed on the cancellation decision. The original appeal may only be submitted if the appeal on the cancellation is granted.** If you believe there has been misconduct by institution staff, you may file a Staff Complaint with that institution. This allows the Hiring Authority an opportunity to first address concerns before advancing the issue to the Office of Appeals for Third Level Review.

(ECF No. 48 at 48.) (emphasis added)

**(5)** On **April 21, 2020**, Plaintiff wrote a letter to the Wasco State Prison-Reception Center (WSP-RC) via the Office of Internal Affairs (OIA), Central Region, in regard to his allegation of sexual violence, sexual assault, and sexual staff misconduct by WSP-RC, by Investigative Services Unit (ISU) staff, and on May 4, 2020, WSP responded back (ECF No. 48 at 22).

**(6)** On **May 7, 2020**, Plaintiff resubmitted Appeal 731 as a new "Emergency Appeal," with the subject heading "Sexual Assault." (ECF No. 48 at 35.)

**Grievance/Appeal 731 resubmitted on May 7, 2020**

**Subject of Appeal: Sexual Assault**

On September 23, 2019, Petitioner was handcuffed and escorted into an opened hallway to be strip searched by ISU Officers who I'll name as John Doe 1-3. One of the officers removed a object from Petitioner's sock band, then returned it back into Petitioner's sock for a picture before removing it for a second time. During this time female free staff and other free staff walked freely through the hall ways observing the search. Then the officers violently slammed Petitioner to the floor in his boxers while handcuffed. While Petitioner was on the ground, the officers physically opened Petitioner's butt cheeks fondling Petitioner's anal cavity while female free staff and other free staff watched. This sexual assault lasted for about 30 seconds and was also witnessed by inmates.

The actions by the ISU Officers violated the prison Rape Elimination Act and traumatized Petitioner tremendously both mentally and physically.

(Id.)

**(7)** On **May 12, 2020**, the resubmitted appeal 731 was cancelled by the prison on Form CDC 695 at the Second Level of review as an attempt by Plaintiff to submit an appeal that had been previously cancelled. (ECF No. 48 at 34.)

**RE: Screening at the Second Level**

GRIEVANCE AGST STAFF, Misuse of Force, **05/12/20**

Log number: WSP-A-20-00731

It has been determined that you are attempting to submit an appeal that has been previously cancelled. Pursuant to CCRá(*sic*)3084.4 you are advised that this is considered misuse or abuse of the appeals process. Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).

You previously submitted this appeal received on 2/14/20. The appeal was cancelled based upon time constraints for filing and appeal and reviewed in accordance with CCR 3084.9(*l*). While your appeal was cancelled, the allegations

were reviewed in outside the appeals process.  You did not appeal the cancellation of the appeal.

The fact that you attached a copy of a response to an OIG letter that you wrote does not negate the facts.  Furthermore, PREA allegation protocols were in fact adhered to in the processing of your complaint.  It is further noted your PREA allegations were initially forwarded to CSP-Corcoran by the OIG's Office, after you wrote their office.

PREA allegation protocols were initiated and your allegations were deemed not to meet the criteria for a PREA investigation by the LDI at CSP-Corcoran.  Additionally, on 12/24/19, while at CSP-Corcoran, you refused to interview with the LDI regarding these PREA allegations.

(Id.)

At the bottom of the screening form, Plaintiff was again advised as follows:

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  **Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be submitted if the appeal of the cancellation is granted.**

(Id.)  (emphasis added)

# X.   ANALYSIS

The parties do not dispute that CDCR had an appeals process at WSP which was available to Plaintiff.  UF #6-9; Cal. Code Regs. tit. 15, § 3084 (Title 15) (2019).  Nor do they dispute that Plaintiff failed to exhaust his administrative remedies to the Third Level of Review as required under § 3084 for the excessive force claim against Defendants in this action.  UF #23-25; Decl. of Moseley at ¶¶8-9, Exhs. 1, 2; Decl. of Theodore G. Lee Exhibit 1;  (Deposition Transcript (Depo.) at 26 (ECF No. 45-2 at 12)).  There is also no dispute that Plaintiff filed only one appeal addressing the incident at issue in this case which allegedly occurring on September 23, 2019, Appeal Log # WSP-A-20-00731.  (Comp. at 5; Decl. of Moseley, ECF No. 45-1 at 6 (Exh. 01).

However, Plaintiff argues that his Appeal Log # WSP-A-20-00731 was improperly cancelled twice, on February 18, 2020 and May 12, 2020, and he reached a "dead end" where no other remedies were available to him.  He argues that he was very diligent in attempting to complete the appeals process but there were numerous reasons that exhaustion was not available to him.

**First**, after the September 23, 2019 incident at issue, he was confined in administrative

segregation at WSP where he had difficulty obtaining appeal forms and writing materials and submitting appeals.  Because he was unable to obtain supplies on his own, he was forced to depend on the prison officers' assistance, but they told him the forms were not available or that he should ask officers working on another shift.  (Decl. of Pltf., ECF No. 48 at 2:22-28.) Plaintiff's evidence shows that on October 1, 2029, a week after he had been confined in administrative segregation, he submitted a request asking for CDCR 602 forms,.  (ECF No. 48 at 7, Exh. 1.)  Plaintiff  also states he was unable to access the Inmate 602 Appeals Box himself while in administrative segregation and had to depend on correctional officers to collect his 602 forms and drop them into the box.  (Decl. of Pltf., ECF No. 48 3:1-4.)  Plaintiff declares that after he finally received copies of the 602 form, he filed multiple appeals but his appeals were not received or processed, indicating that the appeals were either being lost or destroyed.  (Id. at 3:4-8.)  Plaintiff also provides evidence that he did not have access to his personal property for more than a month after he was transferred to Corcoran State Prison on October 22, 2019, and confined in administrative segregation there.  (ECF No. 48 at 8-11 (Exhs. 2 & 3)).

**Second**, Plaintiff asserts that Defendants used intimidation in an attempt to stop his appeals warning him not to file an appeal about sexual assault.  He declares that he was verbally threatened by Correctional Officer staff at WSP, was told that it would not end well if he did not end his pursuits to pursue the staff misconduct allegation and he would be labeled a snitch.  (Decl. of Pltf., ECF No. 48 at 4:25-30.)

**Third**, Plaintiff argues that prison officials mislabeled his Appeal Log No. # WSP-A-20-00731 and improperly rejected it twice for failure to comply with time restraints.  (Compl., ECF 1 at 5.)  On February 7, 2020, Plaintiff submitted Appeal 731 complaining of "Harassment and Staff Misconduct" concerning the September 23, 2019 incident.  (ECF No. 48 at 39.)   In the appeal, Plaintiff refers to staff misconduct, excessive force, and sexual assault claims, but in screening the appeal, the appeals office limited his claims to "Misuse of Force" and cancelled the appeal because it was not submitted within the 30-day deadline for submitting appeals concerning excessive force. (ECF No. 55 at 13-14.)

On May 7, 2020 (marked rec'd on May 12, 2020), Plaintiff resubmitted Appeal 731, this

time using subject heading "Sexual Assault" (ECF No. 48, pg 35).  Plaintiff argues that the "Sexual Assault" appeal was not filed untimely because there was no time restraint for submitting a "Sexual Assault" appeal under PREA (Prison Rape Elimination Act) standards.  (Decl. of Pltf., ECF No. 48 at 3:18-25.)  However, the appeals coordinator again labeled the resubmitted appeal a "Misuse of Force" appeal and cancelled it as untimely and because Plaintiff had resubmitted the same appeal.  (ECF No. 48 at 34 (Exh. 7))

The evidence does not support Plaintiff's argument that Correctional Counselor II Feliciano erroneously and improperly cancelled his appeals. Plaintiff's argument rests on an erroneous  assumption that his disagreement with the appeals coordinator's assessment should be enough to nullify that assessment.  But Title 15 authorized only state prison officials to screen, review, and decide what issues each inmate appeal concerned, not inmates.  See, generally, Cal. Code Regs. tit. 15, §§ 3084.1-3084.9 (2019).

**Fourth**, Plaintiff argues that some of his outgoing mail was not sent out limiting his ability to correspond with others.  Plaintiff declares that his legal mail to Ombudsman Xina was never processed but was intercepted. (Decl. of Pltf., ECF No. 48 at 4:17-18.)  He also declares that he sent out a letter to the Ombudsman in December but that his outgoing mail sheet does not confirm that.  (Decl. of Pltf., ECF No. 48 at 4:19-22.)  Plaintiff submits a copy of the outgoing mail sheet.  (Exh. 5 to Pltf.'s Decl., ECF No. 48 at 14-21.)

Here, the Court finds that Plaintiff's own evidence, the outgoing mail sheet, shows that between the time of the September 23, 2019 incident and April 6, 2020, Plaintiff was able to send letters to the following:

Office of Inspector GN, Ombudsman, Sacramento - 01/23/20

John Sutton, Warden of Wasco State Prison - 02/10/20, 03/18/20

Chief, Inmate Appeals Branch, CDCR - 02/24/20, 04/03/20

K. Moreno Law Office, Berkeley, CA - 02/26/20, 04/01/20, 04/03/20

J. Burris Law Office, Oakland, CA - 02/26/20

Office of Internal Affairs, Sacramento - 03/30/20

OIG PREA Ombudsperson, Office of Inspector Gen, Sacramento - 03/30/20

Nat'l Lawyers Guld Bay Area Chapter, San Francisco - 04/06/20

E. Baker Center for Human Rights, Oakland - 04/06/20

ACLU of San Diego & Imperial Co. - 10/21/19

(Legal Log, ECF No. 48 at 16-20.)

Plaintiff's evidence also shows that he submitted numerous requests on CDCR Form 22 to prison officials concerning the September 23, 2019 incident.  (ECF No. 48 at 28-32.)

The Court finds that Plaintiff's outgoing mail issues do not excuse his failure to exhaust the remedies available to him.  Even if Plaintiff's outgoing mail was tampered with preventing him from submitting some of his Form 22 requests to the prison, or correspondence to others outside the prison, these obstacles do not excuse Plaintiff from exhausting the remedies available to him.  Plaintiff still had remedies available to him because he could have appealed the cancellations of his Appeal 731. Importantly however, Plaintiff did not appeal the cancellations and therefore has failed to exhaust his remedies.

**Fifth**, Plaintiff argues that the appeals process was confusing and complex and acted as a **"dead end"** foreclosing all further remedies available to him.

In McMurtry v. Hu, No. 2:12-cv-0103-DAD-P, (E.D. Cal. May 21, 2015), 2015 WL 2452804, the court denied defendants' motion for summary judgment based on Plaintiff's failure to exhaust.  In McMurtry, prison officials returned Plaintiff's first level appeal to him with a screening letter stating, "for the following reasons: . . . Per Title 15 Section 3083.3 C (1) The action or decision being appealed is not within the jurisdiction of the department."  The screening letter further stated that "[t]his screening action may not be appealed unless you allege that the above reason(s) is inaccurate."  Plaintiff did not appeal the denial of his inmate grievance and defendants filed a motion for summary judgment arguing that Plaintiff failed to exhaust his remedies to the third level of review.  The court decided that under Sapp, Plaintiff's appeal at the first level ought to have alerted prison officials to the nature of Plaintiff's complaints, that prison officials' asserted reason for denying plaintiff's grievance was inconsistent with the procedural requirements of California Code of Regulations, title 15, § 3084(3), and that "there were no administrative remedies left available to him."

In the instant case, unlike in <u>McMurtry</u>, prison officials notified Plaintiff at least twice in writing that Appeal 731 was cancelled for being filed untimely, and at least three times in writing that he could appeal the cancellation.

> **"Your appeal has been cancelled** pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(4). **Time limits for submitting the appeal are exceeded** even though you had the opportunity to submit within the prescribed time constraints.
>
> CCR §3084.8.(b), states "An inmate or parolee **must submit the appeal within 30 calendar days** of: (1) The occurrence of the event or the decision being appealed, or: (2) Upon first having knowledge of the action of decision being appealed (3) Upon receiving an unsatisfactory departmental response to an appeal filed."
>
> . . . .
>
> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, **a separate appeal can be filed on the cancellation decision.**   The original appeal may only be submitted if the appeal of the cancellation is granted."

(ECF No. 55 at 13-14.) (emphasis added)

> "Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, **a separate appeal can be filed on the cancellation decision.**   The original appeal may only be submitted if the appeal on the cancellation is granted."

(ECF No. 48 at 48.) (emphasis added)

> "It has been determined that **you are attempting to submit an appeal that has been previously cancelled**.  Pursuant to CCRá(*sic*)3084.4 you are advised that this is considered misuse or abuse of the appeals process.  Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).
>
> You previously submitted this appeal received on 2/14/20.  The appeal was cancelled based upon time constraints for filing and appeal and reviewed in accordance with CCR 3084.9(*l*).  While your appeal was cancelled, the allegations were reviewed in outside the appeals process.  **You did not appeal the cancellation of the appeal.**
>
> . . . .
>
> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, **a separate appeal can be filed on the cancellation decision.**   The original appeal may only be submitted if the appeal of the cancellation is granted."

(ECF No. 48 at 34.) (emphasis added)

Here, prison officials explained to Plaintiff in writing why Appeal 731 was cancelled and that he had the right to appeal the cancellation decision.   Plaintiff was provided with information making it clear that he had further exhaustion remedies available.  In addition, 15 CCR sec 3084.6(a)(3) stated, "At the discretion of the appeal coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review".

## X1.   CASE LAW & APPLICATION

Unlike the case In Nunez v. Duncan, 591 F.3d 1217 (9th Cir. 2010), where a warden's erroneous mistake led Plaintiff Nunez on an almost ten month **"wild goose chase,"** nothing of the sort occurred here. After Plaintiff's 602 appeal was cancelled by Correctional Counselor II (CCII) Feliciano on May 12, 2020 for the second and last time,  the first being on February 18, 2020 (ECF Doc 55,  pg 13-14), Plaintiff was again advised in the rejection that he could appeal the cancellation of the appeal. Instead, Plaintiff chose not to pursue the grievance and did not submit an appeal of the cancellation.  The relevant 602 appeal in which Plaintiff raises a claim under the heading "Harassment and Staff Misconduct" (ECF Doc 48, pg 39) which claims that he was assaulted during a strip search, was submitted on February 7, 2020.  On February 18, 2020, Plaintiff's appeal was referred to by the appeals coordinator as a "Misuse of Force" appeal and **cancelled** for being submitted too late.  Plaintiff then resubmitted the grievance, using the heading "Sexual Assault", and it was again screened out on May 12, 2020 by CCII Feliciano. The time between the initial filing of this grievance on February 7, 2020 and the May 12, 2020 cancellation was little more than three months.  It therefore appears that Plaintiff thereafter simply abandoned his grievance (see Blacher v Buffaloe, 2020 WL 4037204; 2020 U.S. Dist. LEXIS 127908), erroneously believing that he was "thwarted by improper screening." While it is true that under some circumstances improper screening of an inmate's administrative grievances renders administrative remedies effectively unavailable, (see Sapp, 623 F.3d 813), here by contrast prison officials still did not send Plaintiff on a **wild goose chase** or to a **dead end**.  Unlike the finding in Nunez, where the court found that Nunez was excused from the

exhaustion requirement because he (Nunez) took reasonable and appropriate steps to exhaust his claim, here Plaintiff Washington did not.

**First**, if Plaintiff Washington felt that he had been thwarted by prison staff from exhausting his remedies: (1) by his difficulties filing appeals while he was in administrative segregation; (2) by erroneous labeling of his appeal by the appeals office; (3) by problems with outgoing mail; (4) by threats or lies by officers; and, (5) by lack of access to his property, he still had post May 12, 2020 administrative remedies available to him by following the instructions given to him in both the February 18 the May 12 cancellations ("**Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.   However, a separate appeal can be filed on the cancellation decision.")**  This was Plaintiff's opportunity to explain his position in the exhaustion process.   Moreover, even if officials at WSP were mistaken in the February 18 initial cancellation that Plaintiff's appeal concerned only a **Misuse of Force** instead of Sexual Assault (of which such claims had no time limit on when they could be filed), Plaintiff could  have easily alerted CDCR officials of this alleged mistake (see below), along with any of the other reasons he had  for missing the 30 day deadline, in an APPEAL of the cancellation.

**Importantly**, if there was confusion as to the true nature of Plaintiff's February 7th appeal it was just as likely caused by Plaintiff himself when titled his  appeal HARASSMENT AND STAFF MISCONDUCT, and by not using the words sexual assault anywhere in the grievance.

To fall within the exception of the Sapp case, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. The Sapp decision requires that Plaintiff demonstrate that prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations (see Blacher). Plaintiff has not shown that his appeal was screened out for reasons inconsistent with or unsupported by applicable regulations.  In Haynes v Biaggini (2017 U.S. Dist. LEXIS 179594), citing Sapp, the court stated, "In Sapp, the Ninth Circuit also analyzed whether the inmate-plaintiff's failure to exhaust would be excused by a good faith belief that administrative remedies were effectively unavailable based on repeated rejections and screen-outs. 623 F.3d at 826-27. The court concluded that the inmate-

plaintiff could not have a 'reasonable belief that administrative remedies were effectively unavailable' because he was specifically instructed on how to rectify the deficiencies in the screened out appeals."  It is clear that Plaintiff did not comply as he was instructed with the requirements of the prison grievance process before filing suit, and even though Plaintiff's appeal was screened out twice, administrative remedies were still available to him because he was specifically instructed on how to address his complaints by an appeal of the cancellation.  Plaintiff simply to follow those instructions.

In the instant case, there is no evidence that officials led Plaintiff to a "dead end" in the exhaustion process. Significantly, after Plaintiff's Appeal 731 was cancelled the second time on May 12, 2020 by CCII Feliciano, Plaintiff was advised on Form 695 that he needed to appeal the cancellation. Plaintiff argues that these instructions were confusing because he had already submitted the same appeal twice, without success. Importantly, and fatal to Plaintiff's argument that he was prevented from exhausting his administrative remedies, is that he did not appeal the cancellation of his appeal after the May 12, 2020 cancellation when he still had available administrative remedies. Plaintiff was clearly instructed that his next step in the exhaustion process was to appeal the cancellation. Plaintiff's failure to follow this **simple** instruction that a separate appeal needed to be filed on the cancellation decision, cannot be excused on the basis of Plaintiff's alleged confusion. The instructions were neither confusing nor complicated, it was Plaintiff's responsibility to complete the exhaustion process to the Third Level of review, and he failed to do so.

## XII.   IN SUMMARY

Notwithstanding the prisons possible misinterpretation of Plaintiff's February 7, 2020 602 appeal, likely caused by Plaintiff himself,    Plaintiff nevertheless failed to follow the simple instructions on how to challenge the cancelled appeal.

Plaintiff has submitted copies of 695 Forms dated February 18, 2020 and May 12, 2020, both which advised Plaintiff that "**once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be submitted if the appeal on the cancellation is granted.**  Plaintiff

also submitted a copy of a letter from the Appeals Office dated March 30, 2020, clearly advising Plaintiff that he could appeal the cancellation of his Appeal 731.  Pursuant to CCR 8084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  **However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be submitted if the appeal on the cancellation is granted.** (ECF No. 48 at 48.)  But Plaintiff failed to follow the instructions, failed to appeal the cancellation, and therefore failed to exhaust remedies which were available to him.  Plaintiff was not led on either a wild goose chase or to a dead end.

The Court notes that Title 15 prison grievance procedures provide that when rejecting an appeal, the appeals coordinator shall complete an Appeals Screening Form, CDC Form 695 (rev 5-83), explaining why the appeal is unacceptable. Evidence shows that Plaintiff was provided with a CDCR Form 695 each time his appeal was cancelled, clearly explaining that.

The law in this area is clear -- the obligation to exhaust available remedies persists as long as some remedy remains available.  <u>Brown</u>, 422 F.3d at 935. Here, even if arguably Plaintiff's appeal was improperly cancelled as not being filed within the 30 day time requirement, all Plaintiff needed to do was follow the instructions provided to him each time his Appeal was cancelled and provide an explanation as to why his appeal should not have been cancelled. Thereafter if his appeal of the cancellation had been granted, he could have resubmitted the appeal.  Having failed to follow this instruction Plaintiff cannot now argue that no further remedies were available to him. The rejections of Plaintiff's Appeal, described above, do not give rise to a reasonably good faith belief that administrative remedies were effectively unavailable due to the improper conduct of prison officials. In this case, Plaintiff has not shown evidence of such improper actions by prison officials.  Based on the foregoing, the Court finds that Plaintiff did not exhaust his administrative remedies for the claims at issue in this case, or that there is anything in his particular case that made administrative remedies effectively unavailable to him.  The Court shall therefore recommend that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies be granted.

## XIII.   CONCLUSION AND RECOMMENDATIONS

The Court finds, based on the record before it, that Plaintiff failed to exhaust his available administrative remedies for his claims in this case against Defendants, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Plaintiff also failed to submit any competent evidence sufficient to create a genuine dispute for trial that Plaintiff exhausted his remedies. Therefore, Defendants' motion for summary judgment, filed on October 7, 2022, should be granted and this case dismissed without prejudice.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Motion to Strike Plaintiff's Notice of Exhaustion, filed on April 11, 2023, be GRANTED;

2.    Plaintiff's Notice of Exhaustion, filed on March 27, 2023, be stricken from the record as untimely;

3.    Defendants' Motion for Summary Judgment, filed on October 7, 2022, be GRANTED and this case be DISMISSED without prejudice, based on Plaintiff's failure to exhaust his available administrative remedies before filing suit; and

4.    The Clerk be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  On or before September 18, 2023, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed **within ten (10) days** after the date the objections are filed.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**August 27, 2023**__              _____ **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE